

**State of Tennessee**

**Department of State**

Division of Business Services
312 Rosa L Parks Ave
6th Floor Wm. R. Snodgrass Tower
Nashville, Tennessee 37243

RECEIVED
FEB 2 3 2010
LEGAL

2/18/2010
Date

7009096000114766604
Certified Number

File No:   MCCCCVOD100087

Company:   **COUNTRYWIDE FINANCIAL CORPORATION**

Name:

Agent/POE:

Address:   4500 PARK GRANDA
CALABASAS, CA 91302

Country:

RE:   JOHN H. KING JR. BY NEX KIN, FRIEND, LABRYANT KING

VS:   COUNTRYWIDE FINANCIAL CORPORATION

## Notice of Service

The enclosed summons and attachments are hereby officially served upon you by the Office of the Tennessee Secretary of State pursuant to Tennessee Law. Please refer to the summons and attachments for details concerning the lawsuit filed against you. If you have any questions, please contact the clerk of the court which issued the summons. You can obtain the court's telephone number by calling information (area code) 555-1212. The name of the court and county where the court is located will be on the attached summons.

The summons will either tell you a court date and time at which you must appear to defend yourself or tell you the number of days from the day you are served within which you must file an answer upon the plaintiff's attorney. Failure to appear in court at the time specified or failure to answer the summons within the given time could result in a judgement by default being rendered against you for relief sought in the lawsuit.

The Secretary of State's Office cannot give you legal advice. If you need legal advice, please consult a private attorney.

Sincerely,

*Tre Hargett*

Tre Hargett
Secretary of State

enclosures
Initial:   KDF
CC:

**EXHIBIT**

SS-4214 (Rev. 3/97)                                                 RDA 1003

MC CC CV ɑD ID 0087

# STATE OF TENNESSEE
## MONTGOMERY COUNTY
### 19TH. JUDICIAL DISTRICT

John H. King, Jr. by Next Kin, Friend,
LaBryant King,

                        Plaintiff,

Vs.

Countrywide Home Loans, Countrywide Financial Corp., Countrywide,

                      Defendant.

Civil Action Docket No. ____
Method of Service:
[   ] Montgomery Co. Sheriff
[   ] Out of County Sheriff
[ x] Secretary of State
[   ] Certified Mail
[   ] Personal Service
[   ] Commissioner of Insurance

To the above named Defendant:

You are summoned to appear and defend a civil action filed against you in the Circuit Court of Montgomery County, Tennessee, Montgomery County Courthouse, Court 2, Millennium Plaza, Suite 115, Clarksville, Tennessee, 37040, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to Plaintiff's address listed below.

ISSUED: _____ 1 | 19 | 10 _____

                                    Cheryl Castle
                                   Circuit Court Clerk
                                   Or
                                   Ted Crozier
                                   Clerk & Master
                     By: ____ D. Holles ____

Attorney For Plaintiff: By Next Friend LaBryant King, See T.R.Civ.P., Rule 17.03
Or
Plaintiff's Address: LaBryant King #115464, N.W.C.X.-Main, 960 State Route 212, Tiptonville, Tennessee 38079

---

TO THE SHERIFF:
    Please execute this summons and make your return hereon as provided by law.

Receive this summons for service this _____ day of _____ 2010.

                                      Cheryl Castle
                                      Circuit Court Clerk
                                      Or
                                      Ted Crozier
                                      Clerk & Master

                         By: _____

                                  **Sheriff**

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify that on ____ day of _____, 2010, I:
_____ served summons and complaint on
_____ in the following manner:
_____ failed to serve this summons within 90 days after its
issuance because: _____
_____
_____

_____
**Sheriff/Process Server**

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify, that on the ____ day of _____, 2010, I sent, postage
prepaid by registered return mail or certified mail, a certified copy of the summons and a copy of the
complaint in Docket No. _____ to the defendant, _____
_____. On the ____ day of _____, 2010, I
received the return receipt for said registered or certified mail, which had been signed by
_____ on the ____ day of _____,
2010. Said return receipt is attached to this original summons and both documents are being sent herewith to
the Circuit Court Clerk or Clerk & Master for filing.

**SWORN TO AND SUBSCRIBED BEFORE ME ON THIS**
_____ day of _____, 2010.

_____
Plaintiff, Plaintiff's Attorney or Other person
Authorized By Statute To Serve Process

____Notary Public or ____ Deputy Clerk
MY COMMISSION EXPIRES: _____

**TO THE DEFENDANT(S):** Tennessee law provides a four thousand dollar
(S4,000.00) debtor's equity interest personal property exemption from
execution or seizure to satisfy a judgment. If a judgment must file a written list
under oath, of the items you wish to claim property as exempt, you must file a
written list, under oath, of the items you wish to claim as exempt with the clerk
of the court. The list may be filed at any time and may be changed by you
thereafter as necessary; however, unless it is    filed before the judgment
becomes final, it will not be effective as to any execution or garnishment issued
prior to the filing of the list. Certain items are automatically exempt by law and
do not need to be listed; these include items of necessary wearing apparel
(clothing) for yourself and your family and trunks or other receptacles
necessary  to contain such apparel, family portraits, the family Bible, and
school books. Should any of these items be seized, you would have the right to
recover them. If you do not understand your exemption right or how to exercise
it, you may wish to seek the counsel of a lawyer.

**STATE OF TENNESSEE**          )     I Cheryl Castle   Clerk of Circuit Court or Clerk & Master
**COUNTY OF MONTGOMERY**)     in the State and County aforesaid, do hereby certify this to be a true and
                                Correct copy of the original summons issued in this case:

By: D Hollis _____

**IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, TENNESSEE**
**NINETEENTH JUDICIAL DISTRICT**
**AT CLARKSVILLE**

John H. King Jr., by Next Friend
LaBryant King,

        Plaintiff,      MC CC CV ___ 10 _0087___

Vs.                **CASE NO.** _____

Countrywide Financial Corporation,
Countrywide Home Loans, Bank of America,
American Freedom Mortgage, Tamra
Burch, and American Title Company, Inc.,

        Defendants.

### Next Friend's Oath And Affirmation

    I, LaBryant King, Next Friend of his Father, Plaintiff John H. King Jr., do solemnly swear under penalties of perjury, avers and affirms that, owing to his poverty, Plaintiff is not able to bear the expense of the action in which he his about to commence, and that he is justly entitled to the relief sought, to the best of the Next Friend's belief". <u>See</u> **T.C.A.§§20-12-127.**

    Also, owing to his mental condition and incapacity (early stages of Alzheimer's disease and/or dementia) Plaintiff is unable to prosecute this action. <u>See</u> **T.C.A.§20-12-129.**

                          **Affiant,** LaBryant King, Next
                                  Kin, Friend

**STATE OF TENNESSEE** )
**COUNTY OF LAKE** )
    **PERSONALLY APPEARED BEFORE ME,** LaBryant King, the undersigned, a Notary Public, in and for said County and State, Lake, whose identity I have personally verified, and who acknowledge that he executed the foregoing document for the purpose herein stated.

    **SWORN TO AND SUBSCRIBE** before me this 8th day of January , 200~~9~~10.

_Michelle Hamlin_
**Notary Public**             My Commission Expires: _December 28, 2011_

31

Case 3:10-cv-00271   Document 1-1   Filed 03/22/10   Page 4 of 51 PageID #: 10

**IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, TENNESSEE
NINETEENTH JUDICIAL DISTRICT
AT CLARKSVILLE**

John H. King Jr., by Next Friend
LaBryant King,

              Plaintiff,

Vs.                          **CASE NO.** _____

Countrywide Financial Corporation,
Countrywide Home Loans, Bank of America,
American Freedom Mortgage, Tamra
Burch, and American Title Company, Inc.,

              Defendants.

**UNIFORM AFFIDAVIT OF INDIGENCY**

I, LaBryant King, Next Friend of John H. King Jr., having been duly sworn according to law, make oath that because of his poverty, Plaintiff and/or his Next Friend is unable to bear the expenses of this case and that he is justly entitled to the relief sought to the best of my belief. The following facts support his poverty.

1. Full Name: <u>Mr. LaBryant</u>.

2. Address: <u>Northwest Correctional Complex-Main, 960 State Route 212, Tiptonville, Tennessee 38079</u>.

3. Telephone Number: <u>Not applicableUnknown</u>.

4. Date of Birth: <u>May 30, 1960</u>.

5. Names and Ages of All Dependents:

<u>Not applicable</u>                Relationship _____

<u>Not applicable</u>                Relationship _____

<u>Not applicable</u>                Relationship _____

<u>Not applicable</u>                Relationship _____

<u>Not applicable</u>                Relationship _____

1

6. I am employed by: Not applicable.

My employer's address is: Not applicable

My employer's telephone number is: Not applicable

7. My present income, after federal income and social security taxes are deducted, is:

$ Not applicable per week or $ Not applicable per month.

8. I receive or expect to receive money from the following sources:

| | | |
|---|---|---|
| AFDC | $ Not applicable | per month beginning Not applicable |
| SSI | $ Not applicable | per month beginning Not applicable |
| Retirement | $ Not applicable | per month beginning Not applicable |
| Disability | $ Not applicable | per month beginning Not applicable |
| Unemployment | $ Not applicable | per month beginning Not applicable |
| Worker's Comp. | $ Not applicable | per month beginning Not applicable |
| Other | $ Not applicable | per month beginning Not applicable |

9. My expenses are:

| | | |
|---|---|---|
| Rent/House Pymt. | $ Not applicable | per month |
| Groceries | $ Not applicable | per month |
| Electricity | $ Not applicable | per month |
| Water | $ Not applicable | per month |
| Gas | $ Not applicable | per month |
| Transportation | $ Not applicable | per month |
| Medical/Dental | $ Not applicable | per month |
| Telephone | $ Not applicable | per month |
| School Supplies | $ Not applicable | per month |
| Clothing | $ Not applicable | per month |
| Child Care or Court- | $ Not applicable | per month |
| Ordered Child Support | $ Not applicable | per month |
| Other | $ Not applicable | per month |

9. Assets: Not applicable

2

| | | |
|---|---|---|
| Automobile | $ <u>Not applicable</u> | (Fair Market Value) |
| Checking/Savings Account | $ <u>Not applicable</u> | |
| House | $ <u>Not applicable</u> | (Fair Market Value) |
| Other | $ <u>Not applicable</u> | |

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| <u>Not applicable</u> | <u>Not applicable</u> |
| <u>Not applicable</u> | <u>Not applicable</u> |
| <u>Not applicable</u> | <u>Not applicable</u> |
| <u>Not applicable</u> | <u>Not applicable</u> |

I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this action.

_____
Next Friend LaBryant King,

## ORDER ALLOWING FILING ON PAUPER'S OATH

It appears based upon the Affidavit of Indigency filed in this cause and after due inquiry made that the Plaintiff is an indigent person and is qualified to file this case on a pauper's oath.

It is so ordered this the ___ day of _____, 200__. **JAN 2 1 2010**

**/S/ ROSS H. HICKS**
_____
JUDGE

3

## DETERMINATION OF NON-INDIGENCY

It appears based upon the Affidavit of Indigency filed in this cause and after due inquiry made that the Plaintiff is not an indigent person because

**IT IS ORDERED AND ADJUDGED** that the Plaintiff does not qualify for filing this case on a pauper's oath.

This the ___ day of _____, 200__.

_____
JUDGE

**NOTICE: If the judge determines that based upon your affidavit you are not eligible to proceed under a pauper's oath, you have the right to a hearing before the judge or, in those cases that can be appealed to Circuit Court, a hearing before the Circuit Court judge.**

4

John H. King Jr., by Next Friend,
LaBryant King,

        Plaintiff,        MC CC CV OD 10 0087

Vs.                       CASE NO. _____

Countrywide Financial Corporation,
Countrywide Home Loans, Bank of America,
American Freedom Mortgage, Tamra
Burch, and American Title Company, Inc.,

        Defendants.

## COMPALNT

**COMES NOW,** the Plaintiff, John H. King Jr., by and through LaBryant King, as Next Friend

of his Father, and brings this action pursuant to **T.C.A.§§47-18-101, §47-18-109(a)(1), (3), (b);**

**§47-18-112,** of the **Tennessee Consumer Protection Act of 1977.**

## JURISDICTION

This Court has subject matter jurisdiction over this cause of action pursuant to the mandates of

**T.C.A.§§16-10-106, §16-11-102(a); §20-2-214(a)(1)-(4),** and **47-18-109(2).**

## STATUTE OF LIMITATIONS

Per **T.C.A.§47-18-110,** "Any action commenced pursuant to **T.C.A.§47-18-109** shall be

brought within one (1) year from a person's discovery of the unlawful act or practice. Thus,

under the discovery rule, a cause of action accrues and the statute of limitations commences to

run when [a claimant] discovers, or in the exercise of reasonable diligence ... should have

discovered the [wrongdoing]." **Stanbury v. Bacardi,** 953 S.W.2d 671, 675(Tenn.1997), **Terry**

**v. Community Bank of Northern Virginia**, 255 F.Supp.2d 817(W.D.Tenn.2003). In the

instant case, Plaintiff contacted Defendant **Countrywide** in February 2009, requesting all loan

1

documents and the historical monthly statements relative to **Account No.: 042264364**. Subsequently, on March 9, 2009, Defendant Countrywide provided Plaintiff with a copy of the **"Note" (Loan Number: 031112054)** and **"Transaction History For 2005 & 2008"**. <u>See</u> **[Exhibit No. 1**: Note (Loan Number: 031112054) and Deed Of Trust; **Exhibit No.** 2: Transaction History For Account No. 042264364, 2005 & 2008, Date Prepared 01/03/06 & 01/15/09].** After being provided with such documents, the Plaintiff forwarded such documents to the Next Friend named in this Complaint, and only after his review of the documents were the alleged unfair and deceptive acts of Defendant's **"AMF"**, **"CFC"**, and **"BAC"** discovered.

More specifically, because of the named Defendant's **("AMF"**, **"CFC"**, **"BAC")** failure to make the mandatory disclosures pursuant to the **Federal Truth In Lending Act (herein TILA), 15 U.S.C.§§1631(a), (b); §1632(a), §1638, §1639; 12 C.F.R.§226.5B; T.C.A.§47-14-125(a); and §45-2-1107"**; the illegal nature of the interest, rates, charges, fees, and costs; as well as; the true identity of the actual lender was concealed from the Plaintiff. In other words, since the **National Banking Act** and **Federal Depository Institutions Deregulation and Monetary Control Act** permit out of state state-chartered banks to charge interest and loan fees in excess of the statutory ceilings imposed by Tennessee, Plaintiff was unaware at closing that any malfeasance had occurred. Thus, Plaintiff was unaware of the facts supporting his cause of action until they were discovered by the Next Friend through reasonable diligence and a review of the loan documents received on March 9, 2009. Therefore, the discovery rule outlined in **T.C.A.§47-18-110** applies to this case, and the Complaint is timely.

## PARTIES

1. Plaintiff, John H. King Jr., at all times herein mentioned, was a resident of 430 Glenn Street, Clarksville, Montgomery County, Tennessee, 37040.

2. Defendant **Countrywide Financial Corporation, (herein "CFC")**, a wholly owed subsidiary of **Bank of America (herein "BAC")**, is a thrift holding company, and at all times mentioned herein engaged in the funding of real estate secured, owner occupied residential mortgage loans; as well as the purchasing of such mortgages from independent servicers, and/or unaffiliated third parties.

3. Defendant **Countrywide Home Loans, Inc.**, a wholly owned subsidiary of **"BAC"** is or was a licensed mortgage banking organization, and at all times mentioned herein engaged in the funding of real estate secured, owner occupied residential mortgage loans; as well as the purchasing of such mortgages from independent servicers, and/or unaffiliated third parties.

4. Defendant **"BAC"**, a Delaware Corporation, purchased **"CFC"**, on July 1, 2008, including **Countrywide Home Loans, Inc.** and **Countrywide Financial Corporation**.

5. Defendant **American Freedom Mortgage Inc.**, a Georgia corporation, **(herein "AFM")** wholly owned by Tamara Burch, was a medium sized retail lender, private S Corporation, which conducted business as a multi-state direct to consumer correspondent lender and mortgage broker specializing in the origination of sub-prime and Atl-A mortgage loans.

6. Defendant **American Title Company Inc.** at all times herein mentioned is named as the Trustee in the **"Deed of Trust"**.

3

## DEFINITIONS

1. *"CFC Purchased Loans"* means any residential mortgage originated by an unaffiliated third party and directly or indirectly purchased by **"CFC"** or its subsidiaries through their correspondent lending channels or otherwise provided. **"CFC"** purchased loans do not include **"CFC"** originated residential mortgage loans.

2. *"Consumer"* means any natural person who seeks or acquires by purchase, any service or things of value wherever situated, or any such person who is solicited to purchase or who purchases the services of a credit services business; as well as such person in whose principle dwelling a security interest is retained or. **T.C.A.§47-18-103**.

3. *"Mortgage"* means a mortgage or "Deed Of Trust" as defined in, and allowed pursuant to **T.C.A.§66-5-103**. <u>See</u> **T.C.A.§45-13-102(9)**.

4. *"Mortgage Lender"* means any person who in the regular course of business lends money that is secured by a mortgage. <u>See</u> **T.C.A.§45-13-102(10)**.

5. *"Mortgage Loan"* means any one-to-four family residential owner occupied loan secured by a first or second mortgage intended for personal, family, or household purposes. <u>See</u> **T.C.A.§45-13-102(11)**.

6. *"Mortgage Loan Broker"* means any unaffiliated third party, person, or corporation, who for compensation or other gain, paid directly or indirectly, or in expectation of compensation or offers to do so, solicits, places, negotiates or originates mortgage loans for others, or who closes mortgage loans that may be in the mortgage loan broker's own name, which loans are thereafter sold or transferred to another person or corporation, through contact by correspondence, mail, telephone, or in person with the borrowers or potential borrowers. <u>See</u> **T.C.A.§45-13-102(12)**.

4

7. *"Mortgage Loan Originator"* means any unaffiliated third party, person, or corporation who provides services to one or more licensee or registrant in exchange for compensation by that licensee or registrant. The term does not include an employee of a licensee or registrant whose job responsibilities are limited to clerical tasks. <u>See</u> **T.C.A.§45-13-102(13)**.

8. *"Mortgage Loan Servicer"* means any unaffiliated third party, person, or corporation who in the regular course of business assumes responsibility for servicing residential mortgage loan. <u>See</u> **T.C.A.§45-13-102(14)**.

9. *"Sub-prime Mortgage Loans"* means a residential mortgage that combines higher risk features (such as low or no documentation, low equity, adjustable interest rates, prepayment penalties, cash-out financing) with higher risk borrowers profiles (lowers **FICO** scores, recent bankruptcy/foreclosure, major derogatory credit), resulting in a loan that could not reasonably be underwritten and approved as a "prime" loan.

10. At all times described below, whenever reference is made in this complaint to Defendant **"AFM"**, such allegations shall be deemed to mean the act or practice of a (1) *"Mortgage Loan Broker"*, (2) *"Mortgage Loan Originator"*, (3) *"Mortgage Loan Servicer"*, and *"Mortgage Lender"*.

11. At all times described below, whenever reference is made in this complaint to Defendant's **"CFC"** and **"BAC"**, such allegations shall be deemed to mean the act or practice of purchasing directly or indirectly a mortgage originated by an unaffiliated third party.

12. At all times described below, whenever reference is made in this complaint to any act or practice of Defendants, such allegations shall be deemed to mean that the act of each Defendant, officers, directors, employees, agents, representatives, and any unaffiliated third party servicers, acting individually and jointly.

5

## ALLEGATIONS

### I

Defendant's **"AFM"**, **"CFC"**, and **"BAC"** have at all times described below, engaged in conduct which constitutes "trade, commerce, consumer transaction, the offering and/or providing of goods, services", as defined in **T.C.A.§§47-18-103(5), (10), (11)**.

### II

Plaintiff have at all times described below, engaged in conduct which constitutes the terms of a "consumer" as defined in **T.C.A.§§47-18-103(2).**

### III

Plaintiff avers that Defendant's **"AFM"**, **"CFC"**, and **"BAC"** have at all times described below, violated and/or continuing to violate the **Tennessee Consumer Protection Act of 1977**, by means of unfair and deceptive business acts and practices; as well as fraudulent misrepresentations.

### IV

Specifically, Plaintiff avers that during negotiations (correspondence and telephone conversations), between the months of November and December 2003, Defendant **"AFM"** induced him into signing the **"Note"** and **"Deed Of Trust"** contained in this case by means of unfair and deceptive business practices. More specifically, through (1) the nondisclosure and withholding of material information, (2) overt coercion, (3) false misrepresentations of low teaser rates, monthly payments, and no closing costs, (4) constant and routine advise to accept the high priced loan contained herein, and (5) a high degree of susceptibility due to his age (79 years old); Defendant **"AFM"** led him to believe that he was eligible for, and could afford a loan that he could not. **See [Exhibit No. 3: State of Tennessee, _ex rel._ Robert E. Cooper Jr.,**

6

__Attorney General and Reporter v. Countrywide Financial Corporation, a Delaware__ __corparation, Countrywide Home Loans, Inc., a New York corporation; and Full Spectrum__ __Lending Inc., a California corporation__, Complaint For Permanent Injunction And Other Relief, pgs. 4-5, Case No. 09C202, Circuit Court of Davidson County(Jan.22, 2009)(copies of complaint and settlement documents available at http://state,tn.us/attorney general/cases/countrywide/countrywide.html.; __Exhibit. No. 4__: The Mortgage Lender Implode-O-Meter News Pick-ups: Imploded: American Freedom Mor...http://ml-implode.com/imploded/lender_AmericanFreedomMortgage, Inc._2007-1-30.html].

V

Also, Plaintiff avers that during the above mentioned negotiations Defendant **"AFM"** falsely and fraudulently promised him that he would receive funds in the amount of $20,000.00 to $25,000.00 for the purpose of home improvements, at a fixed rate, and that such rates would not be adjustable at a later date. Said Defendant further informed him that there would be no closing costs. However, it is the averment of the Plaintiff that such funds or amounts ($20,000.00 to $25,000.00) were never disbursed to him by Defendant **"AFM"** or any other named Defendant, and the **"Note"** and **"Deed Of Trust"** contained in this case is usurious. Thus, this averment addresses a patently false disclosure of Defendant **"AFM"** as it relates to the funds and amounts he would receive, the fees and costs that would be charged; as well as the failure to perform the actual disbursement of funds. More over, the **Transaction History For 2005 & 2008,** clearly demonstrates that the original interest rates and monthly installment payments increased in 2005. <u>See</u> [__Exhibit No. 2__: __Transaction History For Account No. 042264364, 2005 & 2008, Date Prepared 01/03/06 & 01/15/09__].

7

## VI

It is the averment of the Plaintiff that neither the **"Note"** of December 30, 2003, nor **"Deed Of Trust"** contained in this case is in compliance with the **Federal Truth In Lending Act 15 U.S.C.§§1631(a), (b); §1632(a), §1638, §1639; 12 C.F.R.§226.5B**; per the mandates of **T.C.A.§47-14-125(a)**. Specifically, neither the **"Note"** nor **"Deed Of Trust"** disclose the (1) method of determining the finance charge, (2) amount to be financed, (3) total of payments, (4) number and amount of payments, (5) retention or acquisition of a security, (6) processing fee, (7) administrative fee, (8) application fee, (9) how to exercise the right to rescind, (10) the effects of rescission, and (11) Notice Of Cancellation. **See [Exhibit No. 1: Note and Deed Of Trust].**

## VII

Plaintiff also avers that during negotiations, and at the December 30, 2003, signing of the **"Note"** and **"Deed Of Trust"** contained in this case, Defendant **"AFM"** never informed him that (1) the sub-prime and/or Alt-A mortgage loan he received is riskier in that they are made to borrowers unable to qualify for traditional loans, (2) the sub-prime and/or Alt-A mortgage loan he received has a much higher rate of default, (3) he was unqualified according to underwriters standards to receive the residential mortgage loan contained in this case, (4) by signing the **"Note"** of December 31, 2003, and **"Deed Of Trust"**, he was placed in a risky, high priced, and ultimately unaffordable mortgage loan which would result in his being delinquent on his monthly installment payments and foreclosure, and (5) that such corporation was increasing it's market share by offering financial incentives to employees and brokers to sell more non-traditional loans with increasingly less adherence to underwriting guidelines. **See [Exhibit No. 3: State of Tennessee, _ex rel._ Robert E. Cooper Jr., Attorney General and Reporter v. Countrywide Financial Corporation, a Delaware corparation, Countrywide Home Loans, Inc., a New**

8

York corporation; and Full Spectrum Lending Inc., a California corporation, Complaint For Permanent Injunction And Other Relief, pgs. 4-5, Case No. 09C202, Circuit Court of Davidson County(Jan.22, 2009)(copies of complaint and settlement documents available at http://state,tn.us/attorney general/cases/countrywide/countrywide.html.].

## VIII

Plaintiff further avers that the December 30, 2003, **"Note"** and **"Deed Of Trust"** are usurious and unenforceable because the Principle amount, charges, costs, and interest demonstrated upon the face of said are excessive and "deceptively manufactured". Specifically, the language contained in paragraph 1 of the **"Note/Installment Contract"** states in pertinent part: "In return for a loan that I have received, I promise to pay U.S. $56,250.00". This amount is called the "Principal, plus interest". However, such amount is not the "Principal". In Commercial Law the "Principal" is the amount of the loan not including interest. **See Blacks Law Dictionary, Sixth Edition, pg. 1192(1990)**. More specifically, the statement "In return for a loan that I received" clearly demonstrates that the specific loan amount, which would be the "Principle", is not stated or indicated. Therefore, the "$56,250.00" stated upon the face of the **"Note"** and **"Deed Of Trust"** is the amount Plaintiff promised to pay on a unspecified, uncertain, and unstated principle loan amount. Thus, the "$56,250.00" stated in the **"Note"** and **"Deed Of Trust"** is not the "Principle", and any calculation of the 6.5% interest relative to such amount can only be usurious and excessive. For such rate should have been calculated against the actual amount of the lone which is unspecified, uncertain, unstated, and unknown. [**Exhibit No. 1**: **"Note"** and **"Deed Of Trust"**]; see also **Deaton v. Vise**, 210 S.W.2d 665(Tenn.1948), **Terry v. Community Bank of Northern Virginia**, 255 F.Supp.2d 817(W.D.Tenn. 2003), **Jefferies v. Ameriquest Mortg. Co.**,543 F.Supp.2d 368(E.D.Pa. 2008).

9

## IX

Also, Plaintiff avers that the monthly payments of $355.54, for thirty (30) years is a "deceptively manufactured amount" and is excessive because it results in an amount exceeding that which would be paid for the actual loan amount (which is unspecified, uncertain, unstated, and unknown) that was between $20,000.00 to $25,000.00. More specifically, the monthly payments of $355.54 for a period of thirty (30) years results in the payment of an amount ($127,994.40) in excess of that necessary to pay the Principle loan amount ($20,000.00 to $25,000.00) plus interest. **[Exhibit No. 1: Note/Installment Contract and Deed Of Trust].**

## X

It is the further averment of the Plaintiff that Defendant **"AFM"** engaged in a scheme to mislead him concerning the true nature of financing as it relates to the mortgage loan in this case. **Harvey v. Ford Credit Company, 8 S.W.3d 273, 275(Tenn.Ct.App.1999).** Specifically, Defendant **"AFM"** failure to disclose the true nature of the charges, costs, and interest relative to the "deceptively manufactured" amount of "$56,250.00", demonstrated upon the face of **"Note"** and **"Deed Of Trust"** is actionable here, where the Defendant engaged in a pattern of deceptive conduct. **Adkinson v. Harpeth Ford-Mecury, Inc., WL 17177(Tenn.App.1991). [Exhibit No. 1: Note and Deed Of Trust].**

## XI

Furthermore, it is the averment of the Plaintiff that based upon a plain reading of the **"Note"** and **"Deed Of Trust"** contained in this case, it is impossible to determine whether any charges, costs, and interest are accurate pursuant to **12 C.F.R. §226.23(g)(1) Regulation Z, T.C.A.§47-14-125(a). [Exhibit No. 1: Note and Deed Of Trust].** Specifically, Plaintiff has shown material issues relative to whether **"AFM's"** disclosures of a "$56,250.00 Principal" is deceptively

10

manufactured and materially inaccurate. Plaintiff's arguments regarding the material inaccuracies that lead to the disclosure violations can be broken into two categories: (1) **"AFM"** did not disclose all of the finance charges as required by **12 C.F.R. §226.4(b)**, and (2) **"AFM"** charged costs, fees, and interest that were not *bona fide* or were unreasonable, and did not disclose said in violation of **T.C.A.§47-14-125(a), T.C.A.§45-2-1107, 12 C.F.R. §226.4(c)(7)**. **Jefferies v. Ameriquest Mortg. Co.,** *543 F.Supp.2d 381-82.*

## XII

Plaintiff avers that Defendant **"AFM"** made a direct payment of the (unspecified, uncertain, unstated, and unknown) principle amount relative to the contract of December 30, 2003, to a home improvement contractor in violation of **T.C.A.§45-13-123(a).**

## XIII

Plaintiff avers that Defendant **"AFM"** has failed to credit and record all of the monthly installment payments of $355.54, he made during the months of February through December of 2004, relative to the December 31, 2003, **"Note"**. Specifically, there is no accounting records and/or transaction history relative to **Loan No. 031112054**, thus, there is no record reflecting or disclosing that such monthly payments were accredited to his mortgage loan. **See [Exhibit No. 2: Transaction History For Account No. 042264364, 2005 & 2008, Date Prepared 01/03/06 & 01/15/09].**

## XIV

More specifically, it is the further averment of the Plaintiff that Defendant **"AFM"** has failed to properly maintain his loan account, which has resulted in an inaccurate payment and transaction history relative to **Loan No. 031112054** and **Account Number 042264364**. **[Exhibit**

11

**No. 2: Transaction History For Account No. 042264364, 2005 & 2008, Date Prepared 01/03/06 & 01/15/09].**

XV

In addition, the Plaintiff avers that (1) the "5% late charge" on overdue payments language contained in Paragraph 6.(A) and the "right to be paid back" language in Paragraph 6.(E) of the **"Note"**, (2) the "No Offset" language of Paragraph 1 in the **"Deed Of Trust"**, (3) the "additional debt for interest and rates" language in Paragraph 9 of the **"Deed Of Trust"**, (4) the "Default" language for the initiation of "any action or proceeding, whether civil or criminal" and "the forfeiture and cancellation of proceeds from any claim or damages" language of Paragraph 11 in the **"Deed Of Trust"**, and (5) the language in Paragraph 14 of the same relative to "fees for services performed in connection with any default. . .and other fees that 'are not' specified"; are "unenforceable penalties" under Tennessee Law. **Beasley v. Horrell, 864 S.W.2d 45, 50-51(Tenn.Ct.App. 1993), Brooks v. Network of Chattanooga, Inc., 946 S.W.2d 321,324(TennCt.App.1996), and Goggin Truck Line Co., Inc. v. Brake Pro,Inc., WL 1183058(Tenn.Ct.App. 2000).**

XVI

Based upon a plain reading of the language contained Paragraph 6.of the **"Note"** (A), it is the averment of the Plaintiff that the "5% late charge" contained therein is actually interest. **Kelso Oil Co. Inc. v. East West Truck Stop, Inc., 102 S.W.3d 655(Tenn.Ct.App.2002).** Such language clearly demonstrates that the "late charge" is compensation for the continued use of the money owed on the **"Note"** and that such provision was made in consideration of forbearance and for the extension of time for payment. More specifically, the Defendant **"AFM"**, would receive such "late charge" based solely on the terms of the **"Note"**. To be sure, the "5% late

12

charge" must be paid as consideration for the Defendant's forbearance of asserting his right of collection. **Wilson v. Dealy**, 434 S.W.2d 835,837(Tenn.1968). Thus, the "5% late charge" constitutes interest and is usurious because it is compensation for the use of money. **Richardson v. Brown**, 68 Tenn. 242(1877), **Bang v. Phelps & Bigelow Windmill Company**, 96 Tenn. 361, 34 S.W. 516(1896). [**Exhibit No. 1**: Note, pg. 3].

### XVII

Also, it is the averment of the Plaintiff that the "5% late charge" constitutes a double interest provision and is an unenforceable damages penalty. Specifically, Paragraph 2 of the **"Note"** contains a 6.5% yearly interest rate. However, if the Plaintiff fails to make a monthly payment, Paragraph 6.(A) mandates a charge of 5% of the "Principal and Interest". Such charge clearly results in the payment of the 6.5% interest on the principal amount, plus the payment of 5% of such interest, which constitutes "interest on interest". More over, such "5% late charge" results in payment of interest above the 6.5% yearly interest rate. In fact, the 5% late charge added to the 6.5% yearly interest rates becomes 11.5%. **Richardson v. Brown**, *Supra.*, **Bang v. Phelps & Bigelow Windmill Company**, *Supra*. Thus, because the "5% late charge" compensates for the use of money, such charges are subject to State regulation of interest rate and exceeds the yearly rate contained in the **"Note"**. As such, said charge or rate is usurious, and voids the contract. [**Exhibit No. 1**: Note, pgs. 1, 2].

### XVIII

It is the further averment of the Plaintiff that the "No Offset" language contained in Paragraph 1 of the **"Deed Of Trust"** constitutes a forfeiture and/or cancellation provision. Within this paragraph it is mandated that no "Offset" or claim" Plaintiff might have now or in the future against the Defendant's will relieve him from making the monthly installment payments due

13

under the **"Note"** and **"Deed Of Trust"**. Specifically, the language demonstrates that if this Court grants injunctive or declaratory relief, or any monetary damages or judgment on the claims in this action he will not be relieved of any illegal or usurious interest, rates, charges, costs, or fees in the **"Note"** and **"Deed Of Trust"**, nor can he "Offset" or reduce the balance of the **"Note"** and **"Deed Of Trust"** if this Court rescinds such documents based upon claims contained in this action. **[Exhibit No. 1: Deed Of Trust, para. 1]**.

## XIX

Based upon the no "Offset" language, the Plaintiffs avers that he would forfeit any and all claims, injunctive and declaratory relief; as well as any monetary damages or judgment granted in this action by the Court. It is obvious that no purpose other than a penalty or forfeiture is served by such language. Without question, the language constitutes an unenforceable penalty because it is not a reasonable estimation of the foreseeable damages from the failure to make installment payments required by the **"Note"**. <u>Beasley</u>, *Id. at 50.* Here, this Court cannot enforce a provision or language in a contract that results in a forfeiture of an amount "greatly in excess" of the amount of actual damages, not to mention the fact of the "deceptively manufactured" Principle amount. <u>Harmon v. Eggers</u>, **699 S.W.2d 159, 163 (Tenn.App.1985)** (*quoting Eller Brothers, Inc. v. Home Federal Savings & Loan Assn.,* **623 S.W.2d 624, 628 (Tenn.App.1981)**). Forfeitures or penalties are not favored by our law. <u>Eller Bros., Inc. v. Home Federal Sav. & Loan Ass'n of Nashville</u>, **623 S.W.2d 624,628(Tenn.Ct.App.1981)**. Any doubt as to whether a sum is a penalty or liquidated damages will generally be resolved as a penalty because forfeitures and penalties are not favored. <u>Goggin Truck Line Co., Inc. v. Brake Pro,Inc.</u>, *Id. at *,* <u>Harmon</u>, *699 S.W.2d 163.* **[Exhibit No. 1: Deed Of Trust, para. 1]**.

14

## XX

It is the further averment of the Plaintiff that (1) the "reasonable attorneys' fees" language in Paragraph 6.(E) of the **"Note"**, (2) "paying reasonable fees to protect it's interest in the property and/or rights" language in Paragraph 9 of the **"Deed Of Trust"**, and (3) "attorneys' fees" language in Paragraph 14 of the same document constitutes unenforceable penalties. Specifically, such language was not drafted into said paragraphs based on a "reasonable estimation" of any attorney fees that may be incurred by Defendant's as a result of defending against any civil or criminal proceeding. More specifically, neither the **"Note"** nor **"Deed Of Trust"** provides a "specific amount to be allowed and paid as attorney fees". **Nu-Way Ice Cream Mach. Co. Inc. v. Pig'n Whistle**, 65 S.W.2d 575, 579(Tenn.1933), **Cummings & Co. v. Mascari**, 402 S.W.2d 719,728-29(Tenn.1966), **Wilson Management Company v. Star Distributors Co.**, 745 S.W.2d 870,872-73(Tenn.1988). **[Exhibit No. 1: Note, pg. 2 and Deed Of Trust, para. 9, 14]**.

## XXI

Also, it is the averment of the Plaintiff that where the **"Note"** and **"Deed Of Trust"** fails to provide for a "specific amount allowed and to be paid as attorney fees", there is no proof or evidence as to what would be reasonable, thus, Defendant's have waived any attorney fees. More over, this Court is without authority to award such fees. **Nu-Way Ice Cream Mach. Co. Inc. v. Pig'n Whistle**, *Supra*. **Cummings & Co. v. Mascari**, *Supra.*, and **Wilson Management Company v. Star Distributors Co.**, *Supra*. **[Exhibit No. 1: Note and Deed Of Trust]**.

## XXII

Plaintiff avers that this Court must follows the "American Rule" that "in the absence of a contract or statute so providing, there is no right to have attorneys' fees paid by an opposing

15

party in civil litigation." **State ex rel. Orr v. Thomas**, 585 S.W.2d 606, 607 (Tenn.1979)(citing Deyerle v. Wright Mfg. Co., 496 F.2d 45(6th.Cir.1974); **Carter v. Va. Sur. Co.**, 187 Tenn. 595, 216 S.W.2d 324(Tenn.1948); **Raskind v. Raskind**, 45 Tenn.App. 583, 325 S.W.2d 617(Tenn.Ct.App.1959); **Gillespie v. Fed. Compress & Warehouse Co.**, 37 Tenn.App. 476, 265 S.W.2d 21(Tenn.Ct.App.1954); **Marshall V. Fisrt Nat. Bank of Lewisburg**, 622 S.W.2d 558(Tenn.Ct.App.1981). Specifically, attorney's fees are not ordinarily an element of contract damages. **Stringfield v. Hirsch**, 94 Tenn. 425, 437-38, 29 S.W. 609, 613(1895); **Goings v. Aetna Cas. & Sur. Co.**, 491 S.W.2d 847, 848(Tenn.Ct.App.1972). Accordingly, the **"Note"** and **"Deed Of Trust"** must contain an express provision for the payment of attorney's fees in order to enable Defendant's to recover the legal expenses they may incur relative to a any civil or criminal proceeding. **Pullman Standard, Inc. v. Abex Corp.**, 693 S.W.2d 336, 338(Tenn.1985); **Pinney v. Tarpley**, 686 S.W.2d 574, 581 (Tenn.Ct.App.1984). Here, the Court cannot construe the language in Paragraph 6.(E) of the **"Note"**, and Paragraphs 9 and 14 of the **"Deed Of Trust"** as enabling Defendant's to collect attorney fees in any civil or criminal proceeding where such language "does not" (1) provide a "specific amount to be allowed and paid as attorney fees", (2) provide proof or evidence as to what would be reasonable, and (3) waives all attorney fees. **Hewley v. Vivo**, WL 92077*4(Tenn.Ct.App.1997). [**Exhibit No. 1**: Note, pg. 2, Deed Of Trust, para. 9, 14].

## XXIII

Also, it is the Averment of the Plaintiff that since litigation is at best uncertain, one should not be penalized for merely prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for bringing a proceeding includes the fees of their opponent's counsel. **Farmer v. Arabian American Oil Co.**, 379 U.S. 227, at

16

235, 85 S.Ct. 411, at 416, 13 L.Ed.2d 248 (1964); id., at 236--239, 85 S.Ct. 417--418 (concurring opinion of Mr. Justice Goldberg). Also, the time, expense, and difficulties of proof inherent in litigating the question of what constitutes reasonable attorney's fees would pose substantial burdens for judicial administration. **Oelrichs v. Spain, 15 Wall. 211, 21 L.Ed. 43 (1872).**

XXIV

Again, based upon a plain reading of the (1) "right to be paid back. . .for all costs and expenses in enforcing the Note" language in Paragraph 6.(E) of the **"Note"**, (2) "If there is a legal proceeding that might significantly affect the Lender's interest" and "additional debt of Borrower" language contained in Paragraphs 9 of the **"Deed Of Trust"**, (3) "if any action or proceeding, whether civil or criminal is begun" language contained in Paragraph 11of the same, as well as (4) the "fees for services performed". . .language contained in Paragraph 14 of the **"Deed Of Trust;** it is unquestionable that such was written with respect to any costs, services, fees, or expenses that Defendant's may incur as a results of defending against any legal actions initiated on the part of the Plaintiff. Without doubt, such language is an attempt on the part of Defendant **"AFM"** to create a liquidated damages clause that results in an unenforceable penalty. **Goggin Truck Line Co.,** *Id. at 2*. The **"Note"** and **"Deed Of Trust"** list four (4) instances relative to legal actions which triggers the obligation for Plaintiff to pay costs, fees, or expenses associated with civil or criminal proceedings. A liquidated damage is a sum agreed upon by contracting parties at the time they enter into their contract, to be paid as compensation for damages suffered by one party based upon a certain event. **V.L. Nicholson v. Transcon Investment,** 595 S.W.2d 474, 484(Tenn.1980). In the instant case such would be the filing of a legal action. Because the referenced language makes payment of the legal costs, services, fees, or

17

expenses due as a result of defending against some civil or criminal proceeding, it is clear that such was intended merely to penalize for bringing such actions. **Goggin Truck Line Co.,** *Id. at 3.* [**Exhibit No. 1**: **Note, pg. 2, and Deed Of Trust, para. 9, 11, 14**].

## XXV

Again, Plaintiff avers that this Court must follow the "American Rule" with regard to awarding legal fees. This Court cannot compel him to pay the legal expenses of the Defendant's unless such fee-shifting is authorized by statute, contract, or some other recognized equitable ground. **Kultura, Inc. v. Southern Leasing Corp., 923 S.W.2d 536, 540 (Tenn.1996); Kimbrough v. Union Planters Nat'l Bank, 764 S.W.2d 203, 205 (Tenn.1989)**. More over, at common law, a party had no right to the payment of its litigation costs, fees, or expenses. **Mooneys v. State, 10 Tenn. (2 Yerg.) 578, 579 (1931); McCormic v. Smith, 668 S.W.2d 304, 306 (Tenn.Ct.App.1984)**. Thus, a court's power to determine what items of legal expense will be considered costs and whether or not to award them to a litigant depends upon legislative enactment. **Railroad v. Boswell, 104 Tenn. 529, 532, 58 S.W. 117, 118 (1900); Person v. Fletcher, 582 S.W.2d 765, 767 (Tenn.Ct.App.1979)**, and **Owens v. Stanley, 739 S.W.2d 782(Tenn.Ct.App.1987)**. There is no statute in this State requiring a party to a proceeding to pay the opposing parties litigation costs, fees, or expenses.

## XXVI

Additionally, it is the averment of the Plaintiff that the "monetary default provision" contained in paragraph 6(A) provides compensation for missed payments. Therefore, the (1) immediate payment provisions in Paragraph 10 of the **"Note"**, (2) "No Offset" provision of Paragraph 1, (3) provisions in Paragraph 9 mandating additional debt for legal proceedings, (4) forfeiture of proceeds from any claim or damages provision in Paragraph 11, and (5) provisions in Paragraph

14 for the payment of fees for services performed in connection with any default, attorney's fees and other fees that 'are not' specified in the **"Deed Of Trust"**; are not intended to be compensation for a missed or late payment because the "monetary default provision" contained in paragraph 6(A) of the **"Note"** completely fulfills that function. [**Exhibit No. 1**: **Note, pg. 2, Deed Of Trust, para. 1, 9, 11, 14**].

## XXVII

More specifically, Plaintiff avers that the fees, sums, and amounts, contained in the provisions referenced above is not reasonable in relation to the payments and interest Plaintiff has already paid on the "deceptively manufactured" Principle amount. Without question such provisions are an unenforceable penalty because they are not a reasonable estimation of the foreseeable damages for the failure to make the monthly payments contained in the **"Note"**. Here, the fees, sums, and amounts contained therein amounts to a penalty, and will not be enforced. **Beasley v. Horrell**, *864 S.W.2d* .

## XXVIII

Plaintiff avers that on December 30, 2003, when he signed the **"Note"**, Defendant **"AFM"** was without statutory authority to act as a *"Mortgage Lender"* *"Mortgage Loan Broker"*, *"Mortgage Loan Servicer"*, or *"Mortgage Loan Originator"* in this State pursuant to **T.C.A.§45-13-103(a)**, and had not complied with the applicable licensing and registration requirements under Tennessee law.

## XXIX

More over, it is the averment of the Plaintiff that Defendant **"AFM"** was not exempt from the statutory requirement of licensing and registration pursuant to **T.C.A.§45-13-103(2).**

## XXX

In addition, Plaintiff avers that Defendant **"AFM"** had not filed an application in writing, under oath, and in the form prescribed by the **Tennessee Commissioner Of Financial Institutions**, containing (1) it's name and the principal business address outside of Tennessee, and all addresses within Tennessee at which the applicant is conducting or intends to conduct business; (2) the name and address of each executive officer and each director, the registered agent for service of process, and each stockholder owning or controlling through voting trust or other agreement twenty-five percent (25%) or more of the outstanding capital stock of the corporation; and (3) whether such corporation is a mortgage lender, mortgage loan broker, or mortgage loan servicer, or any combination thereof, pursuant to **T.C.A.§45-13-104(a)(1), (3), (4)**.

## XXXI

**"AFM"** failed to "notify the **Tennessee Commissioner Of Financial Institutions** five (5) days prior to any change in the principle place of it's business" per **T.C.A.§45-13-107**. Specifically, on or about February 16, 2007, Defendant **"AFM"** closed the doors to it's original and second headquarters in Atlanta and Marietta, Georgia due to (1) financial difficulties as a result of repurchase demands from investors, (2) diminished funding capacity because of increase in non-performing loans, (3) commenced litigation based on donkeyigned loans that resulted in early payment defaults, (4) lawsuits from equipment lessors to advertising firms, (5) accrued advertising bills that far outstripped it's ability to pay. <u>See</u> **[Exhibit No. 5: Atlanta Business Chronicle, Internet Article, February 16, 2007]**. However, since such closing, Tamara L. Burch, Co-founder and President of **"AFM"** is operating a net branch for **Admiral**

20

**Lending LLC**, doing business as **theEquityNetwork.com**. See [**Exhibit No. 4: The Mortgage Lender Implode-O-Meter News Pick-ups: Imploded: American Freedom Mor...http://ml-implode.com/imploded/lender_AmericanFreedomMortgage,Inc._2007-1-30.html**].However, Defendant Burch has failed to notify the **Commissioner Of Financial Institutions** of any change in **"AFM's"** principle place of business.

**XXII**

Even more, the Plaintiff avers that Defendant **"AFM"** failed to file a written report with the **Commissioner Of Financial Institutions** describing the event and it's expected impact on the activities of said corporation as it relates to the filing of **Chapter 7 Bankruptcy in Georgia's Northern District Court** and the **Northern District Court of Illinois**. See [**Exhibit No. 4: The Mortgage Lender Implode-O-Meter News Pick-ups: Imploded: American Freedom Mor...http://ml-implode.com/imploded_AmericanFreedomMortgage, Inc._2007-1-30.html, Exhibit No. 5: Atlanta Business Chronicle, Internet Article, February 16, 2007**].

**XXXIII**

It is the averment of the Plaintiff that Defendant's **"CFC"** and **"BAC"** has misrepresented the true identity of the lender by means of unfair, deceptive, and fraudulent business practices; thereby charging him excessive interest. Specifically, Plaintiff avers that Defendant's **"CFC"** and **"BAC"** did nothing to provide the mortgage loan contained in this case, and therefore, incurred no expenses, losses, or risks associated with the origination of the loan. In fact, **"AFM"** provided the funds necessary to make the loans. Thus, Defendant's **"CFC"** and **"BAC"** are not "lenders" as outlined in **T.C.A.§47-14-102(9)**; and is not entitled to receive "compensation for the use, detention, or forbearance to collect money over a period of time." More specifically, it is the averment of the Plaintiff that the monthly payments (interest or compensation) that

21

Defendant's **"CFC"** and **"BAC"** received from him between January 2005 to March 2009, was excessive. <u>**Terry v. Community Bank of Northern Virginia,**</u> *255 F.Supp.2d 823.*

## XXXIV

Also, it is the averment of the Plaintiff that he "did not" execute or deliver a deed of trust conveying or granting Defendant's **"CFC"** and **"BAC"** interest in the property indicated and listed in the **"Note"** and **"Deed Of Trust"** in this case. Specifically, there is no written instrument recorded (**Deed of Trust**) in the **Register of Deeds Office** for Montgomery County, Tennessee; where the property is located, evidencing or indicating a conveyance or the intention thereof to convey the property located at 430 Glenn Street, Clarksville, Tennessee 37040 to Defendant's **"CFC"** and **"BAC"**. More specifically, he never conveyed interest in the property in question; and as a result he retains full ownership of the property at the drafting and filing of this Complaint. In sum, if a conveyance "did not" occur as it relates to Defendant's **"CFC"** and **"BAC"**, Plaintiff has rights superior to those of such defendants. <u>**In re Gee,**</u> **166 B.R. 314, 315-317(Bankr.M.D.Tenn.1993);** <u>**In re Tate,**</u> **WL 33912550(Bankr.E.D.Tenn.2000);** <u>**see**</u> <u>**also**</u> **9 Tennessee Jurisprudence, Deed 7(1993).**

## XXXV

More over, it is the averment of the Plaintiff that land conveyances generally occurs in a two step process (execution of a land sale contract followed by execution and delivery of a deed) which has not occurred in the instant case as it relates to Defendant's **"CFC"** and **"BAC"**. <u>**In re Gee,**</u> *166 B.R. 317;* <u>**In re Tate,**</u> *WL 33912550\*4;* <u>**In re Cohee,**</u> **178 B.R. 154,159(Bankr.M.D.Tenn.1995);** <u>**see**</u> <u>**also**</u> **9 Tennessee Jurisprudence, Deed 7(1993).**

22

## XXXVI

Plaintiff avers that neither Defendant's **"CFC"** or **"BAC"** has priority or interest in the property listed in the **"Note"** and **"Deed Of Trust"** in this case. Specifically, there is no (1) deed for absolute conveyance of any lands, tenements or hereditaments, or estate; (2) instruments of writing for the absolute conveyance of personal property; (3) deed of conveyance, with certificate of probate, certified by the register of the county (Montgomery County, Tennessee) where same has been first registered; (4) mortgages and deeds of trust of either real or personal property; (5) instruments in writing transferring or conveying any right of improvement, occupancy or preemption; (6) Certified copies of decrees divesting the title of land out of one person and vesting it in another; or (7) any instrument that provides for any party to agree to take any action regarding any interest in real property, or not to take such action regarding any interest in real property, including, but not limited to, any agreement to or negative agreement to mortgage, pledge, assign, hypothecate, alienate, subdivide, encumber, sell, transfer, or otherwise affect the real property or any part thereof; as it relates to Plaintiff, Defendant's **"CFC"** and **"BAC"**, and the property situated at 430 Glenn Street, Clarksville, Tennessee 37040. **Washington Mut. Bank v. N.K.T. Land Acquisitions Inc.,** WL 2925299(Tenn.Ct.App. 2008).

## XXXVII

Plaintiff avers that where instruments listed in **T.C.A.§66-24-101** goes unrecorded, then it "shall be null and void as to existing or subsequent creditors of, or bona fide purchasers." **See T.C.A.§66-26-103**. More specifically, where Defendant's **"CFC"** and **"BAC"** have failed to record any of the written instruments mentioned in **T.C.A.§66-24-101,** as it relates to the

property in question, they have no interest or priority in said. **Washington Mut. Bank v. N.K.T. Land Acquisitions Inc.** *Id \*5.*

**XXXVIII**

Plaintiff avers that he has a "right to rely" on the absence of an entry in the records maintained by the **Register Of Deeds for Montgomery County, Tennessee**, relative to those documents (**Deed of Trust**) listed in **T.C.A.§66-24-101. Washington Mut. Bank v. N.K.T. Land Acquisitions Inc.** *Id \*5.*

**XXIX**

More over, Plaintiff avers that since this action was filed prior to Defendant's **"CFC"** and **"BAC"** obtained and filed a **Deed Of Trust** in the **Register Of Deeds for Montgomery County, Tennessee**, evidencing or indicating a conveyance or intention thereof to convey the property located at 430 Glenn Street, Clarksville, Tennessee 37040, his legal interest in side remains undisturbed. ". **In re Gee, *166 B.R. 318.***

**XXX**

Plaintiff also avers that Defendant's **"BAC"** and **"CFC"** had failed to credit and record all monthly installment payments made to them during the years of 2006 and 2007. More specifically, and as stated *supra. at 2,* on March 9, 2009, Defendant's **"BAC"** and **"CFC"** only provided him with the **Transaction History** for 2005 and 2008, there is no payment history for the years of 2006 and 2007. There is no accounting records reflecting or disclosing monthly payments made for the years of 2006 and 2007. Thus, the accounting records and/or transaction history relative to **Account No. 042264364** "does not" reflect or disclose that such monthly payments were accredited to his mortgage loan. More specifically, it is the further averment of the Plaintiff that Defendants **"BAC"** and **"CFC"** has failed to properly maintain his loan

24

account, which has resulted in an inaccurate payment and transaction history relative to **Account No. 042264364**. <u>See</u> **[Exhibit No. 2: Transaction History For  Account No. 042264364, 2005 & 2008, Date Prepared 01/03/06 & 01/15/09].**

   **WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that this **Honorable Court**:

1.  File this Complaint without requiring Plaintiff or Next Friend to give cost bond, and that the Plaintiff by and through his Next Friend be allowed to prosecute this suit *in forma pauperis* per **T.C.A.§§20-12-127, §20-12-129.**

2.  Issue process, and that it be served upon "all named defendants", requiring said to appear and answer this Complaint.

3.  Adjudge and decree that "all named defendants" have engaged in the aforementioned unfair and deceptive acts and practices which violate **T.C.A.§47-18-104.**

4.   Permanently enjoin "all named defendants", their direct and indirect subsidiaries, affiliates, officers, directors, employees, agents, related entities, successors, and assigns, and all other persons and entities corporate or otherwise in active concert or participation with any of them, pursuant to **T.R.Civ.P., Rule 65.03,**  from engaging in the aforementioned unfair or deceptive acts or practices which violate the **Tennessee Consumer Protection Act of 1977,** and that such orders and injunction be issued without bond.

5.  Determine, pursuant to **T.C.A.§47-18-109(a)(4),** whether treble damages should be awarded, by considering (1) the competence of the Plaintiff at 79 years old, (2) the nature of the deception or coercion practiced upon the Plaintiff at 79 years old, and (3) the damage to the Plaintiff.

25

6. Issue a Declaratory Judgment, pursuant to **T.C.A.§47-18-109(b)**, declaring that the act or practice alleged against Defendants **"AFM"**, **"BAC"** and **"CFC"** violates the provisions of the **Tennessee Consumer Protection Act of 1977.**

7. Award three (3) times the actual damages (the amount of all installment payment made from February 1, 2005 to March of 2009) sustained by the Plaintiff pursuant to **T.C.A.§47-18-109(a)(3).**

8. Award treble damages to the Plaintiff in the amount of $84,622.08, pursuant to **T.C.A.§47-18-109(a)(4).**

9. Make such orders or render such judgments as may be necessary to restore to the Plaintiff who has suffered ascertainable loss by reason of the use or employment of unlawful method, act, or practice, any money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, which has been acquired by means of any act or practice declared to be, pursuant to **T.C.A.§47-18-109(a)(1).**

10. Consider as *prima facie* evidence, pursuant to **T.C.A.§47-18-109(d),** the injunction and **Agreed Final Judgement** made pursuant to **T.C.A.§47-18-108**, and assurance of voluntary compliance entered into pursuant to **T.C.A.§47-18-107**, which has not been complied with in the case of <u>State of Tennessee, **ex rel.** Robert E. Cooper Jr., Attorney General and Reporter v. Countrywide Financial Corporation, a Delaware corparation, Countrywide Home Loans, Inc., a New York corporation; and Full Spectrum Lending Inc., a California corporation</u>, **Complaint For Permanent Injunction And Other Relief, Case No. 09C202, Circuit Court of Davidson County(Jan.22, 2009) (copies of complaint and settlement documents available at http://state,tn.us/attorney general/cases/countrywide/countrywide.html.).**

26

Respectfully submitted;

LaBryant King, Next Friend
N.W.C.X.-Main
960 State Route 212
Tiptonville, Tennessee 38079

27

_____

**Affiant**
LaBryant King, Next Friend

**STATE OF TENNESSEE** )
**COUNTY OF LAKE** )

   **PERSONALLY APPEARED BEFORE ME,** LaBryant King, the undersigned, a Notary

Public, in and for said County and State, Lake, whose identity I have personally verified, and

who acknowledge that he executed the foregoing document for the purpose herein stated.

   **SWORN TO AND SUBSCRIBED** before me this 16th day of January , 2009.

Michelle Hamble                  My Commission Expires: December 28, 2011
**Notary Public**

28

# IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, TENNESSEE
## NINETEENTH JUDICIAL DISTRICT
## AT CLARKSVILLE

John H. King Jr., by Next Friend
LaBryant King,

        Plaintiff,

Vs.                              CASE NO. _____

Countrywide Financial Corporation,
Countrywide Home Loans, Bank of America,
American Freedom Mortgage, Tamra
Burch, and American Title Company, Inc.,

        Defendants.

## MOTION FOR RESTRAINING ORDER

**COMES NOW**, the Plaintiff, John H. King Jr., by and through LaBryant King, as Next Friend, pursuant to **T.R.Civ.P., Rule 65.03,** and respectfully moves this **Honorable Court** to issue a restraining order permanently restraining and enjoining the Defendants, their direct and indirect subsidiaries, affiliates, officers, directors, agents, related entities, successors, servants, employees, and all other persons and entities corporate or otherwise in active concert and participation with them from (1) enforcing the void and illegal **"Note"** and **"Deed Of Trust"** referenced in the complaint, (2) demanding monthly payments for the usurious interest, rates, charges, fees and costs contained in the **"Note"** and **"Deed Of Trust"**, (3) not disclosing the true nature of financing as it relates to any usurious interest, rates, charges, fees and costs, (4) not accrediting the monthly payments he's made to his loan account and properly maintaining said, (5) initiating foreclosure proceedings against the property named in the **"Note"** and **"Deed Of Trust"**, and (6) foreclosing on the property named in the **"Note"** and **"Deed Of Trust"**.

In support of this motion the Plaintiff states:

29

1. That on January 8, 2010, he filed a Compliant with this Court by placing said in the institutional mailing system of Northwest Correctional Complex.

2. That Defendant's have been served with a copy of the Complaint, summons and this motion.

3. That Defendant's intend to require the immediate payment of the usurious and "deceptively manufactured" amount owed on the mortgage, initiate the "acceleration" provision contained in the **"Note"** and **"Deed Of Trust"**, and/or foreclose on the property referenced therein.

4. That immediate and irreparable injury, loss, and damage will result to the Plaintiff before the Defendant's or their attorney(s) can be notified or heard in opposition to this motion.

   **WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that this **Honorable Court** issue a restraining order in the instant case.

### THIS IS THE FIRST APPLICATION FOR EXTRAORDINARY RELIEF

Respectfully submitted;

LaBryant King, as Next Friend
Of Plaintiff,
N.W.C.X.-Main
960 State Route 212
Tiptonville, Tn. 38079

30

**Countrywide**
HOME LOANS
P. O. Box 10229
Van Nuys, CA 91410-0229

**Notice Date:** March 9, 2009

**Account No.:** 042264364

**Property Address:**
430 Glenn Street
Clarksville, TN 37040

John King
430 Glenn St
Clarksville TN 37040

---

**YOUR REQUEST HAS BEEN PROCESSED**

Exhibit No. 1: Note and
Deed Of Trust, Loan No.
031112054, 12/31/03

Thank you for your recent contact regarding your request to provide loan document(s).

We are pleased to inform you this request has been completed.

The following documents have been forwarded to you separately: Note/Installment Contract

---

**THANK YOU FOR YOUR BUSINESS**

Thank you for the opportunity to be of assistance.

If you need additional information or assistance, you can contact us online any time. Simply log on to your account at https://customers.countrywide.com and Select 'Message Center.' With your online account, you will also have access to many other convenient services, such as: updating your account information, viewing current and historical monthly statements, enrolling in an automatic payment service, and much more. Or, if you prefer, you can call one of our Customer Service Representatives directly at 1-800-669-6607.






# NOTE     Loan Number: 031112054

DECEMBER 31, 2003          MARIETTA          GEORGIA
[Date]                    [City]            [State]

430 GLENN STREET, CLARKSVILLE, TENNESSEE 37040
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 56,250.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is AMERICAN FREEDOM MORTGAGE INC, A GEORGIA CORPORATION (CFL\DRE # 16339)
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on FEBRUARY 1 2004 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 1, 2034 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2211 NEW MARKET PARKWAY, SUITE 130, MARIETTA, GEORGIA 30067
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 355.54

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

Borrower Initials: _____ _____ _____ _____ _____ _____

MULTISTATE FIXED RATE NOTE–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01          Page 1 of 3

DocMagic eRapid 800-649-1362
www.docmagic.com

 

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

Borrower Initials: _____ _____ _____ _____

Page 4 of 4
Account No.: 042264364

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
JOHN H KING JR   -Borrower      -Borrower

_____ (Seal)      _____ (Seal)
-Borrower      -Borrower

_____ (Seal)      _____ (Seal)
-Borrower      -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01    Page 3 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

Case 3:10-cv-00271 Document 1-1 Filed 03/22/10 Page 42 of 51 PageID #: 48

RECORD & RETURN TO:
American Title Company, Inc.
925 Industrial Drive
Old Hickory, TN 37138

This Instrument Was Prepared By:
American Freedom Mortgage, Inc.
2211 New Market Parkway, Ste. 130
Marietta, GA 30067

Joyce B. Sawyer, Register
Montgomery County Tennessee
Rec #: 71255        Instrument 601369
Rec'd:      70.00   MBk: 7 Pg 949
State:      62.33
Clerk:       1.00      Recorded
EDP:         2.00   1/12/2004 at 8:06 am
Total:     135.33      in Volume
                     943 Pages 2314-2327

After Recording Return To:
AMERICAN FREEDOM MORTGAGE INC
2211 NEW MARKET PARKWAY, SUITE 130
MARIETTA, GEORGIA 30067
Loan Number: 031112054

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

Maximum principal indebtedness in Tennessee for recording tax purposes is $ 56,250.00

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated DECEMBER 31, 2003 , together with all Riders to this document.
(B) "Borrower" is JOHN H KING JR , UNMARRIED

Borrower is the trustor under this Security Instrument.
(C) "Lender" is AMERICAN FREEDOM MORTGAGE INC

Lender is a GEORGIA CORPORATION                                    organized
and existing under the laws of GEORGIA
Lender's address is 2211 NEW MARKET PARKWAY, SUITE 130, MARIETTA, GEORGIA 30067
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is AMERICAN TITLE COMPANY, INC
125 GLANCY ST, GOODLETTSVILLE, TENNESSEE 37072
a resident of XXXXXXXXXXXDavidson CountyTennessee.
(E) "Note" means the promissory note signed by Borrower and dated DECEMBER 31
The Note states that Borrower owes Lender FIFTY-SIX THOUSAND TWO HUNDRED FIFTY AND 00/100                    Dollars (U.S. $ 56,250.00               )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 1, 2034 .
The maximum principal indebtedness for Tennessee recording tax purposes is $ 56,250.00
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

Borrower Initials: ▬▬▬▬▬▬▬▬▬▬▬

TENNESSEE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3043 1/01
Page 1 of 13

DocMagic €Formas 800-649-1362
www.docmagic.com
Volume
943 Pg 2314

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | Legal Description |

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY of MONTGOMERY
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: 66-E-G

Borrower Initials: _____   _____   _____   _____

TENNESSEE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3043 1/01
Page 2 of 13

*DocMagic EForms* 800-649-1362
www.docmagic.com

Derivation Clause

The instrument constituting the source of the Borrower's interest in the foregoing described property was
a
recorded
in the Register's Office of          MONTGOMERY                              County, Tennessee.

which currently has the address of   430 GLENN STREET

[Street]

CLARKSVILLE                            , Tennessee   37040          ("Property Address"):
          [City]                                                    [Zip Code]

TO HAVE AND TO HOLD, the aforedescribed property, together with all the hereditaments and appurtenances thereunto belonging to, or in anywise appertaining, unto the Trustee, its successors in trust and assigns, in fee simple forever.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

Borrower Initials: _____

TENNESSEE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3043 1/01                                   Page 3 of 13

*DocMagic @Rerune* 800-649-1362
www.docmagic.com

J H K

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA,

Borrower Initials: _____  _____  _____  _____  _____

TENNESSEE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3043 1/01
Page 4 of 13

DocMagic ℰℱℴ𝓇𝓂𝓈 800-649-1362
www.docmagic.com

Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Borrower Initials: _____ _____ _____ _____

TENNESSEE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3043 1/01                                    Page 5 of 13

DocMagic EFORMS 800-649-1362
www.docmagic.com

TN30413.dot

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may

Borrower Initials: _____    _____    _____

attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

Borrower Initials:

Tn3043.7.tem

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Borrower Initials: _____    _____    _____

TENNESSEE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3043 1/01
Page 8 of 13

DocMagic ℰℱℴℛℳ  800-649-1362
www.docmagic.com

*J H K*

Tn3043.doc

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in

Borrower Initials: _____ _____ _____ _____ _____

TENNESSEE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3043 1/01
Page 9 of 13

DocMagic *eFarms* 800-649-1362
www.docmagic.com